## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| NORTH ATLANTIC OPERATING COMPANY, INC.; and NATIONAL TOBACCO COMPANY, L.P., | |
| Plaintiffs, | CIVIL ACTION NO. 1:16-cv-00307 |
| v. | |
| KPC DISTRIBUTOR INC; KULDEEP SINGH; PARAMJIT SINGH; CHARANJIT SINGH; BURGER'S, INC., D.B.A. BURGER DAIRY; JGM STORES INC., D.B.A. BURGER DAIRY II; KIRANDEEP, INC., D.B.A. CRESCENT CORNER EXPRESS; KSL STORES INC., D.B.A. GET 2 GO #10; KSL HOLDINGS INC., D.B.A. GET 2 GO #13; COLISEUM QUICK MART INC., A.K.A. GET 2 GO #15; CALHOUN STORE INC., A.K.A. GET 2 GO 16; KPC BROTHERS INC., A.K.A. GET 2 GO 17, D.B.A. GET 2 GO; GET 2 GO 18; VIRK BROTHERS ENTERPRISES INC., A.K.A. GET 2 GO 19, D.B.A. SHELL GET 2 GO #19; JAT BOYZ STORES INC., A.K.A. HARLAN QUICK STOP; KPC INVESTMENTS LLC, A.K.A. ICEWAY EXPRESS; JOHN DOES 1-10; AND XYZ COMPANIES 1-10, | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff North Atlantic Operating Company, Inc. ("NAOC"), and its affiliated company

Plaintiff National Tobacco Company, L.P. ("NTC") (together, "North Atlantic"), by and through

their attorneys, hereby bring this civil action against Defendants KPC Distributor Inc.; Kuldeep

Singh; Paramjit Singh; Charanjit Singh; Burger's, Inc., d.b.a. Burger Dairy; JGM Stores Inc.,

d.b.a. Burger Dairy II; Kirandeep, Inc., d.b.a. Crescent Corner Express; KSL Stores Inc., d.b.a.

Get 2 Go #10; KSL Holdings Inc., d.b.a. Get 2 Go #13; Coliseum Quick Mart Inc., a.k.a. Get 2

Go #15; Calhoun Store Inc., a.k.a. Get 2 Go 16; KPC Brothers Inc., a.k.a. Get 2 Go 17, d.b.a. Get 2 Go; Get 2 Go 18; Virk Brothers Enterprises Inc., a.k.a. Get 2 Go 19, d.b.a. Shell Get 2 Go #19; JAT Boyz Stores Inc., a.k.a. Harlan Quick Stop; KPC Investments LLC, a.k.a. Iceway Express; John Does 1-10; and XYZ Companies 1-10, (collectively, "Defendants").  In support thereof, North Atlantic alleges and states as follows:

## NATURE OF THE ACTION

1.      This is an anti-counterfeiting action against those who manufacture, import, sell, and/or otherwise distribute counterfeit versions of North Atlantic's highly popular ZIG-ZAG® cigarette paper products (defined as roll-your-own cigarette papers and accessories) in Indiana.

2.      As detailed below, the Defendants are distributing counterfeit versions of North Atlantic's ZIG-ZAG® and NAOC® Trademarks (defined herein) and copyrighted text on cigarette paper products and packaging that look identical to North Atlantic products, but that are not distributed by North Atlantic.  In reality, these counterfeit products are inferior, cheaper versions sold without any known quality control or authorization.

3.      The products Defendants distribute are not real, but in fact are cheap counterfeit knockoffs that can be distinguished from North Atlantic's authentic products on sight alone—once one knows what to look for.  Ordinary consumers, however, are being duped into purchasing fake products at the point of sale.

4.      North Atlantic has collected and analyzed samples of Defendants' purported ZIG-ZAG products, their packaging, and their contents, and it has confirmed in each case the counterfeit nature of those products, packaging, and contents.

5.      North Atlantic's authentic ZIG-ZAG® cigarette paper products are subject to the highest quality control standards.  By contrast, counterfeit ZIG-ZAG® brand products are

distributed with no known safety or quality control standards.  It is impossible for North Atlantic to verify the conditions under which the counterfeit products are manufactured and stored.  As such, North Atlantic has irretrievably lost the ability to control the quality and relative safety of products that appear to be sold under its brand.

6.       North Atlantic has expended significant financial and human capital investigating the Defendants and their counterfeiting.  As detailed below, North Atlantic believes Defendants are large-scale distributors responsible for manufacturing and/or importing the counterfeit products into the United States, and for distributing the products to consumers at the wholesale and retail levels.

7.       North Atlantic brings the instant lawsuit to protect itself and consumers from:

a.   Trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114);

b.   False designation of origin, and trademark and trade dress infringement, in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125(a));

c.   Copyright infringement, in violation of the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.*);  and

d.   Trademark infringement and unfair competition under Indiana common law.

**THE PARTIES**

The Plaintiffs

8.       Plaintiff NAOC is a corporation organized and existing under the laws of the State of Delaware with an office and principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

9.      Plaintiff NTC is a limited partnership organized and existing under the laws of the State of Delaware with an office and principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

10.     Together, NAOC and NTC are the exclusive United States licensees of the world-famous ZIG-ZAG® brand cigarette paper products.  As such, they have full right and authority to enforce the ZIG-ZAG® intellectual property rights defined herein.

The Defendants

11.     Defendant KPC Distributor Inc. is an Indiana for-profit corporation with an address and wholesale store at 3212 N Wells Street, Fort Wayne, Indiana 46808 ("KPC Distributor").

12.     Defendant KPC Distributor is involved in the sale and/or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Indiana consumers.

13.     Upon information and belief, Defendant KPC Distributor is owned and/or operated by three individuals who use Defendant KPC Distributor as a vehicle for their own infringement: (i) Defendant Kuldeep Singh, (ii) Defendant Paramjit Singh; and (iii) Defendant Charanjit Singh.

14.     Defendant Kuldeep Singh is an Indiana citizen residing at 1011 Coral Isle Cove, Fort Wayne, Indiana 46845 and/or 10819 Baldham Pass, Fort Wayne, Indiana 46845.

15.     Defendant Kuldeep Singh is an incorporator of Defendant KPC Distributor and is involved in the sale and/or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Indiana consumers.

16.     Defendant Paramjit Singh is an Indiana citizen residing at 1011 Coral Isle Cove, Fort Wayne, Indiana 46845.

17.     Defendant Paramjit Singh is an incorporator and the registered agent of Defendant KPC Distributor, and is involved in the sale and/or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Indiana consumers.

18.     Defendant Charanjit Singh is an Indiana citizen residing at 1011 Coral Isle Cove, Fort Wayne, Indiana 46845 and/or 6901 Endicott Drive, Fort Wayne, Indiana 46808.

19.     Defendant Charanjit Singh is an incorporator and the secretary of Defendant KPC Distributor, and is involved in the sale and/or other distribution of counterfeit ZIG-ZAG® Orange to Indiana consumers.

20.     Alone or together, Defendants Kuldeep Singh, Paramjit Singh, and Charanjit Singh own and/or operate other retail and wholesale stores in Indiana that have also been selling or otherwise distributing counterfeit ZIG-ZAG® cigarette paper products, including:

a.     Defendant Burger's, Inc., d.b.a. Burger Dairy ("Burger Dairy"), an Indiana corporation with an address at 1412 N. Wells, Fort Wayne, Indiana 46808.

b.     Defendant JGM Stores Inc., d.b.a. Burger Dairy II ("Burger Dairy II"), an Indiana for-profit corporation with an address and retail store at 1450 Saint Joe Blvd., Fort Wayne, Indiana 46805.

c.     Defendant Kirandeep, Inc., d.b.a. Crescent Corner Express ("Crescent Corner Express"), an Indiana for-profit corporation with an address and retail store at 1202 E State Blvd., Fort Wayne, Indiana 46805.

d.     Defendant KSL Stores Inc., d.b.a. Get 2 Go #10 ("Get 2 Go 10"), an Indiana for-profit corporation with an address and retail store at 422 Spring Street, Fort Wayne, Indiana 46808.

e.  Defendant KSL Holdings Inc., d.b.a. Get 2 Go #13 ("Get 2 Go 13"), an Indiana for-profit corporation with an address and retail store at 8717 US-24 West, Fort Wayne, Indiana 46804.

f.  Defendant Coliseum Quick Mart Inc., a.k.a. Get 2 Go #15 ("Get 2 Go 15"), an Indiana for-profit corporation with an address and retail store at 3116 W Coliseum Blvd., Fort Wayne, Indiana 46808.

g.  Defendant Calhoun Store Inc., a.k.a. Get 2 Go 16 ("Get 2 Go 16"), an Indiana for-profit corporation with an address and retail store at 4832 S Calhoun Street, Fort Wayne, Indiana 46807.

h.  Defendant KPC Brothers Inc., a.k.a. Get 2 Go 17, d.b.a. Get 2 Go ("Get 2 Go 17"), an Indiana for-profit corporation with an address and retail store at 1817 W Main Street, Fort Wayne, Indiana 46808.

i.  Defendant Get 2 Go 18, upon information and belief, an Indiana corporation with an address and retail store at 720 E Tillman Road, Fort Wayne, Indiana 46816.

j.  Defendant Virk Brothers Enterprises Inc., a.k.a. Get 2 Go 19, d.b.a. Shell Get 2 Go #19 ("Get 2 Go 19"), an Indiana for-profit corporation with an address and retail store at 4935 Bluffton Road, Fort Wayne, Indiana 46809.

k.  Defendant JAT Boyz Stores Inc., a.k.a. Harlan Quick Stop ("Harlan Quick Stop"), an Indiana for-profit corporation with an address and retail store at 17013 State Road 37, Harlan, Indiana 46743.

l.  Defendant KPC Investments LLC, a.k.a. Iceway Express ("Iceway Express"), an Indiana limited liability corporation with an address and retail store at 3996 Iceway, Fort Wayne, Indiana 46805.

<u>The John Doe and XYZ Company Defendants</u>

21.     North Atlantic has reason to believe that other individuals and companies assist the above-named Defendants in their counterfeiting, and that there are other individuals employed by and/or other companies affiliated with the Defendants that are also distributing counterfeit ZIG-ZAG® cigarette paper products to Indiana consumers.  North Atlantic does not know these individuals'/companies' true names and capacities.  Therefore, North Atlantic sues them as John Does #1-10 and XYZ Companies #1-10, inclusive.  North Atlantic will amend this Complaint to allege the true names and capacities of these entities when/if it ascertains the same.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over North Atlantic's Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

23.     This Court has subject matter jurisdiction over North Atlantic's Indiana common-law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

24.     Personal jurisdiction is proper in this judicial district because each Defendant resides and/or is domiciled here; has its registered address and principal place of business here; and/or has had continuous, systematic, and substantial contacts within the state of Indiana, including doing business in Indiana and directing sales of counterfeit products to Indiana consumers.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that a majority of Defendants reside here and a substantial portion of the events giving rise to the claims in this Complaint occurred here.

## **FACTUAL ALLEGATIONS**

<u>North Atlantic's ZIG-ZAG® Brand Products</u>

26.     Since 1938, North Atlantic and its predecessor-in-interest have continuously distributed ZIG-ZAG® brand cigarette paper products in the United States.  In fact, in 1997, North Atlantic was established to be the exclusive United States distributor of authentic ZIG-ZAG® brand cigarette paper products.

27.     Authentic ZIG-ZAG® brand cigarette paper products come in several varieties, which differ in thickness, quality of paper, size, and the like.

28.     Among the cigarette paper products distributed by North Atlantic in the United States are ZIG-ZAG® 1 ¼ Size French Orange ("ZIG-ZAG® Orange"), shown below:

**ZIG-ZAG® Orange**



29.     Authentic ZIG-ZAG® Orange cigarette paper products are described as easy rolling, slow-burning classic papers.

30.     All authentic ZIG-ZAG® Orange cigarette paper products are manufactured in France using the highest-quality ingredients.

8

31.     All authentic ZIG-ZAG® Orange cigarette paper products are imported into the United States by North Atlantic through one particular port of entry.  Thereupon, North Atlantic subjects them to strict and exacting quality control tests.

32.     North Atlantic continually strives to ensure that all of its authentic ZIG-ZAG® brand products, including ZIG-ZAG® Orange:

    a.   Are of uniform high quality;

    b.   Meet with North Atlantic's precise quality standards; and

    c.   Properly display the ZIG-ZAG® and NAOC® Trademarks (defined below) and other source identifiers.

33.     If the products pass North Atlantic's rigorous inspection, then they are sold directly to North Atlantic's "direct accounts" (for the most part, variety wholesale distributors throughout the United States).

34.     North Atlantic's direct accounts distribute the authentic products to retailers and, in some cases, other wholesale distributors.

35.     Ultimately, the authentic products are purchased and used by United States consumers, who attribute to them a high degree of quality and brand goodwill.

<u>North Atlantic's ZIG-ZAG® and NAOC® Trademarks</u>

36.     As described below, all authentic ZIG-ZAG® Orange cigarette paper products distributed by North Atlantic in the United States have continuously displayed the following valid and subsisting trademarks marks, which appear on the Principal Register in the United States Patent and Trademark Office ("USPTO"), and which have become incontestable:

    a.   Registration No. 610,530 for ZIG-ZAG (stylized)



    b.   Registration No. 1,127,946 for ZIG-ZAG (text)

**ZIG ZAG**

    c.   Registration No. 2,169,540 for the Smoking Man Design (circle border)



    d.   Registration No. 2,169,549 for the Smoking Man Design (no border)



(together, the "ZIG-ZAG® Trademarks") (true and correct copies of the records from the USPTO denoting the federal trademark registrations for the ZIG-ZAG® Trademarks are attached hereto as <u>Exhibit A</u>).

       37.   North Atlantic holds exclusive distribution rights to cigarette paper products bearing the ZIG-ZAG® Trademarks pursuant to an exclusive trademark licensing/distribution agreement with French company Bolloré, S.A., the trademark owner.

38.     North Atlantic also owns federal trademark registration for the following NORTH ATLANTIC OPERATING COMPANY, INC. and Gear Design trademarks, which appear on the Principal Register in the USPTO:

    a.   Registration Nos. 2,664,694 and 2,664,695



    b.   Registration Nos. 2,610,473 and 2,635,446

NORTH ATLANTIC OPERATING COMPANY

(together, the "NAOC® Trademarks) (true and correct copies of the records from the USPTO denoting the federal trademark registrations for the NAOC® Trademarks are attached hereto as Exhibit B).

39.     Like the ZIG-ZAG® Trademarks, the NAOC® Trademarks have continuously appeared on all authentic ZIG-ZAG® Orange cigarette paper products distributed by North Atlantic in the United States.

40.     Because of its tremendous sales history, and because of the exclusive, lengthy, and extensive use of the ZIG-ZAG® and NAOC® Trademarks on goods of superior quality, North Atlantic has developed substantial goodwill and a reputation as the exclusive source of high-quality ZIG-ZAG® brand cigarette paper products in the United States.

41.     North Atlantic has also become well known, nationwide, as the exclusive and only source of authentic ZIG-ZAG® brand cigarette paper products—including ZIG-ZAG® Orange—and United States consumers naturally associate those products with North Atlantic.

42.     Thus, the ZIG-ZAG® and NAOC® Trademarks have become famous as a matter of law.

11

<u>North Atlantic's NAOC© Copyright</u>

43.     North Atlantic also owns a federal copyright registration for the visual

material/computer graphic entitled, "North Atlantic Operating Company, Inc." (the "NAOC©

Copyright"), a true and correct copy of which is annexed hereto as <u>Exhibit C</u>.

44.     Currently, and at all relevant times, North Atlantic has been the proprietor of all

rights, title, and interest in and to the NAOC© Copyright.

45.     The NAOC© Copyright also appears on all authentic ZIG-ZAG® Orange

cigarette paper products distributed by North Atlantic in the United States.

<u>North Atlantic's Highly Distinctive Product Packaging</u>

46.     The product packaging for North Atlantic's authentic ZIG-ZAG® Orange is also

highly distinctive.

47.     As illustrated below, North Atlantic's authentic ZIG-ZAG® Orange product

packaging features: (a) the ZIG-ZAG® and NAOC® Trademarks, (b) the NAOC© Copyright,

(c) gold-fill lettering and design elements, (d) French phrases such as "Qualite Superieure" and

"Braunstein Freres France," and (e) the express statement that such products are "Distributed by

North Atlantic Operating Company, Inc."

**Booklet (inside)**



**Booklet (cover)**



(ZIG-ZAG® Trademarks, including ZIG-ZAG® (stylized) and Smoking Man Design;

the NAOC® Trademarks, including the Gear Design; and the NAOC© Copyright)

**Carton (top view)**



**Carton (side view)**



(ZIG-ZAG® and NAOC® Trademarks and NAOC© Copyright)

(viewed together, the "ZIG-ZAG® Orange Trade Dress") (8 ½" x 11" versions of the above

photographs are annexed hereto as <u>Exhibit D</u>).

48.     Currently, and at all relevant times, North Atlantic has used the ZIG-ZAG®

Orange Trade Dress in commerce in the United States.

49.     The ZIG-ZAG® Orange Trade Dress is arbitrary, non-functional, and highly

distinctive.

50.     The ZIG-ZAG® Orange Trade Dress has been extensively and continuously used

by North Atlantic, is inherently distinctive, and/or has become distinctive through the acquisition

of secondary meaning.

51.     Upon information and belief, United States consumers who see the ZIG-ZAG®
Orange Trade Dress immediately associate it with North Atlantic as a source identifier and do
not associate it with any other source.

Defendants' Willful Infringing Activities

52.     Based on North Atlantic's investigation to date, the Defendants herein are
engaged in a widespread, unlawful scheme of acquiring, selling, and/or otherwise distributing
counterfeit ZIG-ZAG® cigarette paper products, specifically, counterfeit ZIG-ZAG® Orange.

53.     Upon information and belief, Defendants' misconduct in engaging in this
counterfeiting scheme is willful.

54.     The key to Defendants' scheme is the sale of products that use packaging that
simulates the packaging of authentic ZIG-ZAG® Orange cigarette paper products distributed by
North Atlantic, namely, packaging that bears virtually identical reproductions of the ZIG-ZAG®
and NAOC® Trademarks and unauthorized, unlicensed copies of the NAOC© Copyright, and
that looks like the ZIG-ZAG® Orange Trade Dress.

55.     Although authentic and counterfeit products appear similar at first glance, a close
inspection reveals numerous differences.

56.     While authentic ZIG-ZAG® brand products distributed by North Atlantic are
subject to strict and exacting quality control standards, the counterfeit ZIG-ZAG® products are
not subject to any known quality control standards.  As a result, North Atlantic cannot vouch for
the safety or quality of the counterfeit products, as they have not, by definition, been subjected to
any of North Atlantic's quality control tests.

57.     North Atlantic also cannot tell what conditions the counterfeit products have been
subjected to, and it cannot vouch for the quality of the ingredients used to manufacture them

15

(even though they are distributed in packaging displaying North Atlantic's registered and licensed trademark and the phrase "Distributed by North Atlantic Operating Company, Inc.").

58.     None of the Defendants are authorized or licensed to sell or distribute any infringing products bearing the ZIG-ZAG® or NAOC® Trademarks; nor are any of the Defendants authorized or licensed to sell or distribute any product packaging that simulates North Atlantic's ZIG-ZAG® Orange Trade Dress or that displays reproductions or exact copies of the NAOC© Copyright.  Nevertheless, North Atlantic has caught them doing so, in violation of North Atlantic's rights and to the detriment of Indiana consumers.

Defendants' Sale/Distribution of Counterfeit Products

59.     Defendants have been willfully selling and distributing counterfeit ZIG-ZAG® Orange cigarette paper products to Indiana consumers.

60.     Defendants have sold dozens of cartons and hundreds of booklets of confirmed counterfeit ZIG-ZAG® Orange to undercover North Atlantic representatives—and these are just the sales North Atlantic knows about.  Extrapolating from these sales, Defendants' distribution of counterfeit ZIG-ZAG® Orange is on a much larger scale.

61.     Between March 2016 and the present, North Atlantic obtained no less than eight (8) cartons of purported ZIG-ZAG® Orange directly from Defendant KPC Distributor.  Through inspection and analysis of the particular products, North Atlantic conclusively determined that the products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

62.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Burger Dairy II.  Through

inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/content have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

63.     Between March 2016 and the present, North Atlantic obtained no less than two (2) booklets of purported ZIG-ZAG® Orange directly from Defendant Burger Dairy.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

64.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Crescent Corner Express. Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

65.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Crescent Corner Express. Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

66.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 10.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

67.     Between March 2016 and the present, North Atlantic obtained no less than two (2) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 13.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

68.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 15.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

69.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 16.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the

products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

70.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 17.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

71.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 18.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

72.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Get 2 Go 19.  Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit.  Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

73.     Between March 2016 and the present, North Atlantic obtained no less than two (2) booklets of purported ZIG-ZAG® Orange directly from Defendant Harlan Quick Stop. Through inspection and analysis, North Atlantic conclusively determined that the particular

products, their packaging, and their contents are counterfeit. Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

74.     Between March 2016 and the present, North Atlantic obtained no less than three (3) booklets of purported ZIG-ZAG® Orange directly from Defendant Iceway Express. Through inspection and analysis, North Atlantic conclusively determined that the particular products, their packaging, and their contents are counterfeit. Therefore, by definition, the products/packaging/contents have not been subject to North Atlantic's rigorous quality control standards, and North Atlantic has no way of verifying their quality or relative safety.

<u>The Defendants' Conduct is Willful</u>

75.     Defendants know they are importing, manufacturing, selling, and/or otherwise distributing counterfeit versions of the famous ZIG-ZAG® Orange cigarette paper products.

76.     The circumstances of the purchases and sales of such products underscores the products' counterfeit nature.

77.     Moreover, Defendants are demonstrating their knowledge by failing to keep accurate business records and refusing to provide customers with receipts. On more than one occasion, Defendant KPC Distributor refused to provide a North Atlantic representative, acting undercover, with a receipt. When the representative insisted, Defendant KPC Distributor ripped the receipt in two pieces, keeping the piece that displayed Defendant KPC Distributor's contact information for itself.

<u>The Irreparable Harm to North Atlantic</u>

78.     Defendants' willful misconduct, described above, is depriving North Atlantic of the absolute right to control the quality of products distributed using its ZIG-ZAG® and

NAOC® Trademarks and NAOC© Copyright.

79.     Thus, the Defendants are jeopardizing the enormous goodwill and value associated with those Trademarks and the NAOC© Copyright, which North Atlantic and/or its predecessor-in-interest have built up over the past century.

80.     Defendants' willful misconduct is also damaging the goodwill and value associated with the ZIG-ZAG® Orange Trade Dress, which is highly-distinctive and associated exclusively with North Atlantic in consumers' minds.

81.     Exacerbating the risk of injury to North Atlantic, Defendants' counterfeit products are of a vastly inferior quality compared with North Atlantic's authentic ZIG-ZAG® brand products.  Consumers deceived by Defendants' simulated ZIG-ZAG® Orange products and packaging have and will purchase Defendants' counterfeit products instead of North Atlantic's authentic products.  As a result, consumers are likely to think less favorably of North Atlantic than if they had purchased North Atlantic's high-quality authentic products, as they no doubt intended to do.

82.     As a direct and proximate result of the foregoing, North Atlantic has suffered and, unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual economic damages in the form of lost sales, revenues, and profits, and immediate and irreparable harm to its trademarks, copyright, Trade Dress, and goodwill, for which it has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

83.     North Atlantic realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 82 above, as though fully set forth herein.

84.     In violation of 15 U.S.C. § 1114, Defendants, independently and in conspiracy with one another, used in commerce, without North Atlantic's consent, either a reproduction, counterfeit, copy, or colorable imitation of the ZIG-ZAG® and NAOC® Trademarks on and in connection with the sale, offering for sale, distribution, or advertising of counterfeit ZIG-ZAG® Orange cigarette paper products, which is likely to cause confusion, or to cause mistake, or to deceive consumers.

85.     Defendants' actions constitute willful infringement of North Atlantic's exclusive rights in and to the ZIG-ZAG® and NAOC® Trademarks, which are registered on the Principal Register in the United States Patent and Trademark Office, and which North Atlantic either owns or has the exclusive right to use and enforce in the United States.

86.     As a direct and proximate result of Defendants' willful misconduct, North Atlantic has suffered irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC® Trademarks, and their reputation in the industry.  Unless Defendants are restrained from further infringement of the ZIG-ZAG® and NAOC® Trademarks, North Atlantic (and consumers) will continue to be irreparably harmed.

87.     North Atlantic has absolutely no adequate remedy at law that will compensate it for the continued, irreparable harm that they will suffer if Defendants' willful misconduct is allowed to continue.

88.     As a direct and proximate result of Defendants' willful misconduct, North Atlantic has suffered damages to the valuable NAOC® Trademarks and ZIG-ZAG® Orange Trade Dress and other damages in an amount not yet known, but to be proved at trial.  North Atlantic is also entitled to statutory damages, trebled damages, and/or its reasonable attorneys' fees, at North Atlantic's option.

**SECOND CLAIM FOR RELIEF**

**FALSE DESIGNATION OF ORIGIN AND**

**TRADEMARK/TRADE DRESS INFRINGEMENT (15 U.S.C. § 1225(a))**

89.     North Atlantic realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 88 above, as though fully set forth herein.

90.     In violation of 15 U.S.C. § 1125(a), Defendants, independently and in conspiracy with one another, in connection with the counterfeit ZIG-ZAG® Orange cigarette paper products, used in commerce a slogan, trade dress, word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with North Atlantic.  Without limitation, Defendants have willfully infringed North Atlantic's exclusive rights in and to the ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and associated common law rights.

91.     As a direct and proximate result of Defendants' willful misconduct, North Atlantic has suffered and is suffering irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and associated common law rights, and to North Atlantic's reputation as a distributor of high-quality ZIG-ZAG® brand cigarette paper products.

92.     Unless Defendants are restrained from further infringement of the ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and associated common law rights, North Atlantic will continue to be irreparably harmed.

93.     North Atlantic has absolutely no adequate remedy at law that will compensate for

the continued and irreparable harm they have suffered, and will continue to suffer, if Defendants'

willful misconduct is allowed to continue.

94.     As a direct and proximate result of Defendants' willful misconduct, North

Atlantic has suffered damages to the valuable ZIG-ZAG® and NAOC® Trademarks, the ZIG-

ZAG® Orange Trade Dress, and associated common law rights, along with other damages in an

amount not yet known but to be proved at trial.

**THIRD CLAIM FOR RELIEF**

**FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101 *et seq.*)**

95.     North Atlantic realleges and incorporates by reference each and every allegation

contained in paragraphs 1 through 94 above, as though fully set forth herein.

96.     Currently, and at all relevant times, North Atlantic has been the sole proprietor of

all rights, title, and interest in and to the NAOC© Copyright.

97.     As provided by 17 U.S.C. § 106, North Atlantic has the exclusive right to, among

other things, reproduce, distribute, publicly display, and create derivative works from the

NAOC© Copyright.

98.     North Atlantic has registered its claim to copyright before the United States

Copyright Office.  To wit, North Atlantic possesses a copyright registration certificate for the

NAOC© Copyright dated October 11, 2002.

99.     Defendants, acting independently and in conspiracy with one another, have

directly infringed the NAOC© Copyright by unlawfully reproducing, transmitting, distributing,

publicly displaying, and/or creating derivative works based on the NAOC© Copyright, in

violation of North Atlantic's exclusive rights under 17 U.S.C. § 106.

100.     Upon information and belief, the foregoing actions of Defendants in violation of

24

North Atlantic's rights have been willful and intentional, executed with full knowledge of North Atlantic's exclusive rights in the NAOC© Copyright and in conscious disregard of those rights.

101.    North Atlantic is entitled to recover from Defendants the profits that Defendants obtained through infringements of the NAOC© Copyright, as well as North Atlantic's damages from those infringements, or, at North Atlantic's election, statutory damages pursuant to 17 U.S.C. § 504.

102.    North Atlantic is also entitled to recover costs and attorneys' fees from Defendants pursuant to 17 U.S.C. § 505.

103.    Defendants' willful infringements of North Atlantic's NAOC© Copyright has caused, and unless enjoined by this Court, will continue to cause, irreparable injury to North Atlantic, which is not fully compensable in monetary damages.  North Atlantic is therefore entitled to preliminary and permanent injunctions prohibiting Defendants from further infringing North Atlantic's NAOC© Copyright.

**FOURTH CLAIM FOR RELIEF**

**<u>COMMON LAW UNFAIR COMPETITION</u>**

104.    North Atlantic realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 103 above, as though fully set forth herein.

105.    In violation of the common law of the State of Indiana and elsewhere, Defendants, independently and in conspiracy with one another, have unfairly competed with North Atlantic by selling counterfeit ZIG-ZAG® Orange cigarette paper products.

106.    Defendants' unauthorized use of North Atlantic's marks tends to cause confusion, mistake, and/or deception among consumers as to the source, quality, and nature of the goods.

107.    Upon information and belief, Defendants have made and will continue to make

substantial profits to which they are not entitled. Unless Defendants' willful misconduct is restrained, North Atlantic will continue to be irreparably harmed as set forth above.

108.    North Atlantic has absolutely no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' willful misconduct is allowed to continue.

109.    As a direct and proximate result of Defendants' unfair competition, North Atlantic has suffered damages to the valuable ZIG-ZAG® and NAOC® Trademarks, the NAOC© Copyright, the ZIG-ZAG® Orange Trade Dress, and its associated common law rights, and it has suffered other damages in an amount not yet known but to be proved at trial.

## FIFTH CLAIM FOR RELIEF

## COMMON LAW TRADEMARK INFRINGEMENT

110.    North Atlantic realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 109 above, as though fully set forth herein.

111.    In violation of the common law of the State of Indiana, Defendants, independently and in conspiracy with one another, used in commerce, without North Atlantic's consent, either a reproduction, counterfeit, copy, or colorable imitation of the ZIG-ZAG® and NAOC® Trademarks on and in connection with the sale, offering for sale, distribution, or advertising of counterfeit ZIG-ZAG® Orange cigarette paper products, which is likely to cause confusion, or to cause mistake, or to deceive consumers.

112.    Defendants' goods are identical to those goods with which the ZIG-ZAG® and NAOC® marks are used and registered.

113.    Defendants' unauthorized use of the ZIG-ZAG® and NAOC® marks is likely to cause, and has caused, consumers to believe, mistakenly, that Defendants' goods are endorsed by

or associated with North Atlantic, when in fact they are not.

114.    Upon information and belief, Defendants have and continue to intentionally misuse the ZIG-ZAG® and NAOC® marks to convey an immediate commercial impression that Defendants are associated with North Atlantic.

115.    Defendant's actions constitute willful infringement of North Atlantic's exclusive rights in and to the ZIG-ZAG® and NAOC® Trademarks, which North Atlantic either owns or has the exclusive right to use and enforce in the United States.

116.    As a direct and proximate result of Defendants' willful misconduct, North Atlantic has suffered irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC® Trademarks, and their reputation in the industry. Unless Defendants are restrained from further infringement of the ZIG-ZAG® and NAOC® Trademarks, North Atlantic (and consumers) will continue to be irreparably harmed.

117.    North Atlantic has absolutely no adequate remedy at law that will compensate it for the continued, irreparable harm that they will suffer if Defendants' willful misconduct is allowed to continue.

## **PRAYER FOR RELIEF**

WHEREFORE, North Atlantic demands judgment against Defendants as follows:

1.  For judgment that:

    a.    Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.    Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a);

    c.    Defendants have violated the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*;

    d.    Defendants have unfairly competed with North Atlantic, in violation of Indiana common law;

    e.   Defendants have infringed on North Atlantic's Trademarks, in violation of Indiana common law; and

    f.   In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of North Atlantic's lawfully protected rights.

2.   For an order preliminarily and permanently enjoining Defendants, their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and employees, and all persons in active concert or participation with them, and mandating that Defendants forever cease and desist and refrain from, anywhere in the world:

    a.   Directly or indirectly importing, manufacturing, distributing, advertising, promoting, making, purchasing, offering for sale, or selling any counterfeit ZIG-ZAG® brand cigarette paper products, including but not limited to ZIG-ZAG® Orange, or any ZIG-ZAG® brand products not sold under the authority of North Atlantic, or any packaging for same, containing or displaying infringing ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright, or any colorable imitation thereof, or simulating the ZIG-ZAG® Orange Trade Dress;

    b.   Selling or passing off, or inducing or enabling others to sell or pass off, any of North Atlantic's products, or products not authorized by North Atlantic, not produced, imported, and distributed under the control or supervision of North Atlantic, and/or approved for sale in the United States, under the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright or the ZIG-ZAG® Orange Trade Dress;

    c.  Committing any acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® brand cigarette paper products are sold under the control or supervision of North Atlantic, when they are not;

    d.  In any way infringing or damaging the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress, or associated common law rights;

    e.  Importing, shipping, delivering, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by North Atlantic to be sold or offered for sale in the United States bearing the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or ZIG-ZAG® Orange Trade Dress;

    f.  Otherwise unfairly competing with North Atlantic in any manner;

    g.  Attempting, causing, or assisting any of the above-described acts, including but not limited to enabling others to conduct the scheme described above, or by passing along information to others to allow them to do so; and

    h.  Destroying or disposing of any documents, records, or electronically-stored information related to the import, manufacture, distribution, advertisement, promotion, making, purchase, offer to sell, or sale of any product that has been or is intended to be sold in packaging containing the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright or simulating the ZIG-ZAG® Orange Trade Dress.

3.  For an order enjoining Defendants and their agents, employees, representatives, successors, and assigns from forming or causing to be formed any corporation,

partnership, or other entity that engages in any of the conduct described above.

4.  For an order requiring Defendants to cooperate with North Atlantic in good faith in its investigation of counterfeit sales at their retail and wholesale establishments, including, without limitation by:

   a.  Permitting North Atlantic representatives or their designees to conduct inspections of Defendants' inventories of cigarette paper products to determine whether any cigarette paper products bearing the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright, or housed in any packaging simulating the ZIG-ZAG® Orange Trade Dress, are counterfeit, and to retain possession of any such counterfeit products;

   b.  Responding to reasonable requests for information about Defendants' source(s) of ZIG-ZAG® brand cigarette paper products; and

   c.  Cooperating with North Atlantic representatives or their designees in their investigations of any source(s) of ZIG-ZAG® brand cigarette paper products.

5.  For an order:

   a.  Requiring Defendants to account for and pay over to North Atlantic all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

   b.  Requiring Defendants to account for and pay to North Atlantic enhanced damages resulting from their wrongful misconduct to the full extent provided for by Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

   c.  Awarding North Atlantic damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c) of the

Lanham Act, 15 U.S.C. § 1117(c);

d.   Requiring Defendants to account for and pay to North Atlantic all profits

derived from their wrongful misconduct, to the full extent provided for by the

Copyright Act, 17 U.S.C. § 504;

e.   Awarding North Atlantic damages, or statutory damages in an amount not less

than $150,000 per infringement of the NAOC© Copyright which occurred

after the filing of its copyright application against each of the Defendants

separately and jointly;

f.   Awarding North Atlantic damages to the full extent provided by Indiana state

law;

g.   Awarding North Atlantic its costs of suit, including reasonable attorneys' fees;

and

h.   Awarding such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

North Atlantic hereby demands a trial by jury on all claims and issues so triable.

Date: August 17, 2016                    Respectfully submitted,


By:  *s/ Gregory W. Pottorff*
          Adam Arceneaux, Atty. No. 17219-49
          Gregory W. Pottorff, Atty. No. 30089-49
          ICE MILLER
          One American Square, Suite 2900
          Indianapolis, Indiana 46282
          Tel.: 317-236-5963
          Fax: 317-592-4642
          Gregory.Pottorff@icemiller.com
          Adam.Arceneaux@icemiller.com

31

Of Counsel:

VENABLE LLP
Marcella Ballard, Esq. (to be admitted *pro hac vice*)
Victoria R. Danta, Esq. (to be admitted *pro hac vice*)
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
Tel.: 212-370-6248
Fax: 212-307-5598
MBallard@Venable.com
VDanta@Venable.com

*Attorneys for Plaintiffs North Atlantic Operating Company, Inc. and National Tobacco Company, L.P.*